**Milton L. OSTERNECK**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. and William Lampe, Appellants.**

**No. 87–1406.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6), Dec. 14, 1987.

Decided March 9, 1988.

C. Clark Hodgson, Jr., John J. Murphy, III, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellant, Merrill Lynch, Pierce, Fenner & Smith, Inc.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for appellant, William Lampe.

Steven H. Lupin, Linda Carol Post, Hamburg, Rubin, Mullin & Maxwell, Lansdale, Pa., for appellee.

Before SLOVITER and COWEN, Circuit Judges, and DEBEVOISE, District Judge.[*]

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

The question on appeal is whether a claim may be maintained for violation of

---

* Hon. Dickinson R. Debevoise, United States District Court for the District of New Jersey, sitting   by designation.

the Pennsylvania Securities Act notwithstanding an agreement to submit such claims to arbitration. The district court refused to submit to arbitration a claim of violation of the Pennsylvania Securities Act because it construed a provision of that Act as forbidding judicial enforcement of prior agreements to arbitrate such claims. We conclude that recent Supreme Court precedent applying the Federal Arbitration Act requires a different result.

## I.

### Background

Plaintiff Milton Osterneck maintained an investment account with Merrill Lynch, Pierce, Fenner & Smith, Inc., with William Lampe as his broker. It is undisputed that in 1981 Osterneck signed a customer agreement that included a clause binding the parties to submit "any controversy between us arising out of your [Osterneck's] business or this agreement" to arbitration. App. at 31.[1]

Osterneck alleged in his complaint, *inter alia*, that Lampe fraudulently induced him to invest in an oil and gas leasing and development concern, and that Merrill Lynch either conspired with Lampe or negligently failed to prevent Lampe's deception. This conduct, according to Osterneck, gave rise to violations of the federal Securities Exchange Act of 1934, the Pennsylvania Securities Act of 1972 and the state common law.

The district court stayed proceedings in Osterneck's suit pending this court's decision in another action on the issue of the arbitrability of claims under the federal Securities Exchange Act of 1934.[2] After the Supreme Court decided that claims under Section 10(b) of the Securities Exchange Act must be submitted to arbitration under the Federal Arbitration Act if the parties have so contracted, *Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the district court ordered arbitration of Osterneck's state common law and federal claims but denied Merrill Lynch's motion to arbitrate the claims under the Pennsylvania Securities Act. Merrill Lynch appeals from that order.

This court's precedent is clear that a district court order granting or denying a stay of its own proceedings pending arbitration is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1) (1982), if the underlying action is at law rather than equity. *H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs and Helpers Local Union No. 384*, 755 F.2d 324, 327 (3d Cir. 1985); *accord Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 403–05 (3d Cir.1987) (citing *Cost Bros., Inc. v. Travelers Indemnity*

1. The clause provided, in full:
It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect. If the controversy involves any security or commodity transaction or contract related thereto executed on an exchange located outside the United States, then such controversy shall, at the election of the undersigned, be submitted to arbitration conducted under the constitution of such exchange or under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, therein electing the arbitration tribunal. In the event the undersigned does not make such designation within five (5) days of such demand or notice, then the undersigned authorizes you to do so on behalf of the undersigned.

2. In *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 797 F.2d 1197 (3d Cir.1986), *vacated*, —— U.S. ——, 107 S.Ct. 3204, 96 L.Ed.2d 691 (1987), we held that pre-dispute agreements to arbitrate claims arising under the Securities Exchange Act of 1934 were not judicially enforceable. Our opinion was vacated by the Supreme Court in light of its decision in *Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), holding that such claims were arbitrable, and we in turn remanded to the district court for further action consistent therewith. *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 824 F.2d 287 (3d Cir.1987).

*Co.*, 760 F.2d 58, 59–60 n. 1 (3d Cir.1985)). Osterneck's claims seeking damages for various statutory and common law breaches are legal. We are therefore satisfied that we have jurisdiction to consider whether the district court erred in refusing to enforce the arbitration agreement. Because this appeal turns on a question of law, our review is plenary.

## II.

### *Discussion*

The Pennsylvania Securities Act of 1972, 70 Pa.Stat.Ann. §§ 1–101 to 1–704 (Purdon Supp.1987), which is based on the Uniform Securities Act, 7B U.L.A. 515 (1985), is a comprehensive scheme regulating the securities industry. Section 507 of the Pennsylvania Securities Act, which is identical to section 410(g) of the Uniform Act, provides that "[a]ny condition, stipulation or provision binding any person acquiring any security to waive compliance with any provision of this act or any rule or order hereunder is void." 70 Pa.Stat.Ann. § 1–507 (Purdon Supp.1987).

In *Martin v. ITM/International Trading & Marketing*, 343 Pa.Super. 250, 255, 494 A.2d 451, 453–54 (1985), the Pennsylvania Superior Court held that section 507 of the Pennsylvania Securities Act precludes enforcement of an agreement to arbitrate claims under that statute absent voluntary agreement of the parties. The *Martin* court noted that in *Moran v. Paine, Webber, Jackson & Curtis*, 422 Pa. 66, 220 A.2d 624 (1966), the Pennsylvania Supreme Court approvingly cited the United States Supreme Court's decision of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In *Wilko*, the Court held that agreements for future arbitration of disputes under the Securities Act of 1933, 15 U.S.C. § 77n (1982), were against the purposes of the Securities Act and, consequently, void. *Id.* at 438, 74 S.Ct. at 188. The superior court in *Martin* reasoned that because section 507 was virtually identical to section 14 of the federal Securities Act of 1933, it also bars the prior waiver of the statutory right to litigate in court claims under the Pennsylvania Securities Act.

*Martin*, 343 Pa.Super. at 254–55, 494 A.2d at 453–54.

The district court in this case relied on *Martin* to hold that the trial of Osterneck's Pennsylvania Securities Act claim need not be stayed pending arbitration. Neither party argues that either the district court or *Martin* erroneously construed the Pennsylvania statute as precluding enforcement of prior agreements to arbitrate. Instead, the parties have limited their arguments to Merrill Lynch's contention that, so construed, section 507 conflicts with the Federal Arbitration Act and is therefore preempted.

Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2 (1982), states that a "written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Federal Arbitration Act further requires any "court[ ] of the United States" hearing a suit on such a contract to stay the action on application of one of the parties "until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3. Enacted in 1924, the Federal Arbitration Act carried out Congress' intention to abolish the common law rule against judicial enforcement of arbitration agreements. *See Cost Brothers*, 760 F.2d at 60. *See generally* H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924). Henceforth, arbitration agreements were to be treated with the same respect due any other contract. *Id.* at 2; *McMahon*, 107 S.Ct. at 2337.

Congress derived its authority to enact the substantive rules of the Federal Arbitration Act from the Commerce Clause. The only limitations under the Federal Arbitration Act on the enforceability of a prior agreement to arbitrate are those stated in section 2 itself: the agreement must be part of a contract "evidencing a transaction involving commerce" which must not be otherwise revocable "upon such grounds as exist at law or in equity." *See Southland Corp. v. Keating*, 465 U.S. 1, 10–11,

104 S.Ct. 852, 858–59, 79 L.Ed.2d 1 (1984). It has not been suggested that either of these limitations apply here.

The preemptive force of the Federal Arbitration Act is clearly established. In *Southland*, the Court held that Congress, in creating the substantive rule of law enforcing arbitration agreements, "intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." 465 U.S. at 16, 104 S.Ct. at 861. The Court therefore concluded that application in either state or federal court of the California Franchise Investment Law to invalidate a contract for arbitration made pursuant to the Federal Arbitration Act violated the Supremacy Clause. The Federal Arbitration Act "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 10; *accord Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 623 n. 10, 105 S.Ct. 3346, 3352 n. 10, 87 L.Ed.2d 844 (1985). It is Osterneck's burden to show that Congress intended to exempt his Pennsylvania Securities Act claim from the general provisions of the Federal Arbitration Act. *See McMahon,* 107 S.Ct. at 2337–38.

Osterneck argues only that this court should enforce the provisions of the Pennsylvania Securities Act "[u]nder the principle of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)." Appellee's Brief at 16. Even before *Erie*, a federal court was required to defer to the state court's interpretation of its statutory law. *See, e.g., Lane v. Vick,* 44 U.S. (3 How.) 463, 476 (1845); *see also Black and White Taxicab Co. v. Brown and Yellow Taxicab Co.,* 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928). The issue is not whether we must follow the Pennsylvania courts' construction of the Pennsylvania Securities Act, which we do. It is instead whether, as so construed, the statute is preempted, a federal issue as to which no deference would be required even had the issue been addressed in *Martin*, which it was not.

The decision of the district court in this case was grounded in the view, expressed by the Supreme Court in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), that there is a "need for judicial determination of disputes arising in the securities investment field." App. at 52. The district court declined to apply the holding in *Southland* to invalidate section 507 of the Pennsylvania Securities Act.

Whatever the continued vitality of *Wilko*, subsequent Court decisions have limited its application to the precise issue before the Court there. In *Wilko*, decided in 1953, the Court opined that arbitration was more suited to solving commercial controversies than to protecting the rights of investors. *Id.* at 438, 74 S.Ct. at 188. It stated that Congress had included an anti-waiver provision in the Securities Act "to assure that sellers could not maneuver buyers into a position that might weaken their ability to recover under the Securities Act." *Id.* at 432, 435, 74 S.Ct. at 185, 186. This view took as a necessary premise the proposition that "arbitration lacks the certainty of a suit at law ... to enforce [the buyer's] rights." *Id.* at 432, 74 S.Ct. at 185.

In cases decided after *Wilko*, the Court has consistently enforced the Federal Arbitration Act's broad mandate for arbitration notwithstanding the strong legislative policy underlying the grant of a private cause of action to enforce rights granted under a particular statute. In a case upholding the application of an arbitration clause to a federal antitrust claim, the Court observed that "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Mitsubishi Motors,* 473 U.S. at 626–27, 105 S.Ct. at 3354–55. In *Southland*, where the Court held that the anti-waiver provision of the California Franchise Investment Law was preempted, it rejected the proffered analogy to *Wilko* because "[t]he question in *Wilko* was not whether a state legislature could create an exception to § 2 of the Arbitration Act, but rather whether Congress, in subsequently enacting the Securities Act, had in fact created such an exception." 465 U.S. at 16 n. 11, 104 S.Ct. at 861 n. 11; *see also Perry*

*v. Thomas,* —— U.S. ——, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (provision of California Labor Act that precluded arbitration of claims for collection of wages preempted).

Moreover, even in cases involving securities claims, the Court upheld the requirement of arbitration. In *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court, suggesting that *Wilko* was limited to cases under the 1933 Act, enforced a pre-dispute arbitration agreement in a multi-national case arising under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). 417 U.S. at 513–14, 94 S.Ct. at 2454–55.

*Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), presented the Court with the case most similar to the one at bar. An investor signed a customer's agreement with his broker which contained an arbitration provision. The investor sued under both the Securities Exchange Act of 1934 and state law. The question presented to the Supreme Court was the enforceability of the arbitration agreement as to the state law claims, and the Court held that pendent state claims were subject to compulsory arbitration. The Court noted that the broker had not sought to compel arbitration on the federal securities law claim because of its reliance on *Wilko.* The Court commented that *Wilko* "retained considerable vitality in the lower federal courts" despite the *Scherk* decision questioning its applicability to a section 10(b) claim; however, the Court declined to clarify *Wilko*'s status because the arbitrability of the federal claims in the case were not before it. 470 U.S. at 215 n. 1, 105 S.Ct. at 1240 n. 1.

Finally, in *McMahon,* the Court resolved a conflict in the circuits and made its position unambiguous by reversing the Second Circuit's decision that *Wilko* precluded arbitration of claims under the 1934 Securities Exchange Act. 107 S.Ct. at 2343. The Court did not overturn *Wilko,* but it read it very narrowly:

> The conclusion in *Wilko* was expressly based on the Court's belief that a judicial forum was needed to protect the substantive rights created by the Securities Act:
>
> > "As the protective provisions of the Securities Act require the exercise of judicial direction to fairly assure their effectiveness, it seems to us that Congress must have intended § 14 ... to apply to waiver of judicial trial and review." [*Wilko,* 346 U.S.] at 437 [74 S.Ct. at 188]. *Wilko* must be understood, therefore, as holding that the plaintiff's waiver of the "right to select the judicial forum," *id.,* at 435 [74 S.Ct. at 186], was unenforceable only because arbitration was judged inadequate to enforce the statutory rights created by § 12(2).

107 S.Ct. at 2338. The Court stated further that its subsequent opinion in *Scherk* had confirmed that "where arbitration does provide an adequate means of enforcing the provisions of the Exchange Act," an arbitration agreement will be compelled. *Id.* at 2339. The Court explained that most of the reasons given in *Wilko* for deprecating the arbitration remedy have subsequently been rejected. *Id.* at 2340–41. It specifically noted the enhanced authority of the Securities and Exchange Commission to insure the efficacy of arbitration procedures, concluding that "[w]hile *stare decisis* concerns may counsel against upsetting *Wilko*'s contrary conclusion under the Securities Act, we refuse to extend *Wilko*'s reasoning to the Exchange Act in light of these intervening regulatory developments." *Id.* at 2341.

As long as *Wilko* stands in the Supreme Court, agreements to arbitrate claims under the Securities Act of 1933 will remain unenforceable, but that is the only rule *Wilko* now stands for. The overwhelming weight of precedent militates against following *Wilko* to a finding that Congress intended to exempt state securities claims from the general command of the Federal Arbitration Act. Although we are mindful of the threshold presumption that Congress did not intend to displace state law, *see Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 185 (3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987), section 507 of the Pennsylvania Securities Act, when applied to preclude arbitration that falls within the Federal Arbitration Act, "stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress," just as did the California statute in *Southland,* and is therefore preempted. *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *accord Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981); *Cipollone,* 789 F.2d at 185–87.

### III.

### *Conclusion*

For the reasons set forth above, we will reverse the district court's order denying defendant's motion to compel arbitration of Osterneck's claims arising under the Pennsylvania Securities Act. We will remand the case to the district court with instructions to direct arbitration of these claims.