Columbus P. SACCO

v.

PRUDENTIAL–BACHE SECURITIES, INC. and Harold Wenger, Jr.

Civ. A. No. 88–6457.

United States District Court, E.D. Pennsylvania.

Dec. 21, 1988.

Scott H. Spencer, Lancaster, Pa., for plaintiff.

Daniel E. Bacine, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

This matter comes before the court on defendants' Motion to Stay Proceedings pending arbitration and Defendants' Motion to Stay Discovery. The action arises out of defendants' alleged "churning" and mismanaging plaintiff Columbus Sacco's securities account. For the reasons stated below, defendants' motion to stay proceedings will be granted in part and denied in part; defendants' motion to stay discovery will be denied.

## FACTS

Plaintiff opened a securities account with defendant Prudential–Bache Securities, Inc. ("Pru–Bache") to which it assigned defendant Harold Wenger as account executive. (Complaint ¶ 21). Plaintiff executed two agreements with Pru–Bache which govern his securities account, and which allegedly provide for the arbitration of disputes that might arise out of the transaction of his account. (Defendants' Exhibits A and B). In 1986–87, plaintiff sold his welding business and deposited the proceeds in his Commonwealth National Bank ("CNB") trust account. (Complaint ¶ 51). After discussions with defendants, plaintiff granted them authority to execute transactions within the CNB account. (Complaint ¶ 58). Plaintiff alleges that in 1986 and 1987 defendants churned the accounts, buying securities with the intention of maximizing their commission income and without regard for their suitability to plaintiff's investment goals. (Complaint ¶¶ 35 & 47). Plaintiff alleges that through this behavior defendants violated (1) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. §§ 240.10b–5; (2) Sections 17(a) and 12(2) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77q and 77*l*; and (3) Section 501 of the Pennsylvania Securities Act of 1972.

## DISCUSSION

### A. *Stay of Proceedings*

Defendants argue that we should stay proceedings pending arbitration because plaintiff agreed to arbitrate all claims at issue under the following provision of his contract:

Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, and whether executed or to be executed within or outside of the United States, except for any controversy arising out of or relating to transactions in commodities or contracts related thereto executed on or subject to the rules of a contract market designated as such under the Commodity Exchange

Act, as amended, shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, provides that an agreement in writing to settle by arbitration a controversy arising out of the contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The Act also expressly requires that, upon application of any party to a valid, written arbitration agreement, a federal district court must stay its proceedings where the issues to be presented are subject to that agreement. 9 U.S.C. § 3. The Arbitration Act does not permit the exercise of discretion by district courts, but instead mandates that courts direct the parties to arbitrate issues in accordance with their arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Furthermore, if there is any ambiguity in the language of the agreement, all doubt should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983).

■ Plaintiff does not dispute that he must arbitrate some of his claims, but instead argues that (1) his claim arising under § 12(2) of the Securities Act of 1933 is not arbitrable as a matter of law and (2) the contract with Pru–Bache does not cover the claims arising out of transactions through the CNB account, and hence the arbitration provision does not apply. We agree with the first contention and disagree with the second.

In *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that a claim arising under § 12(2) of the Securities Act of 1933 is not arbitrable. The Court reasoned that the arbitration agreement deprived the plaintiff of his right under the Security Act to select the judicial forum in which to pursue his claim. *Id.* at 435, 74 S.Ct. at 186. Plaintiff could not waive this right because § 14 of the Act, 15 U.S.C. § 77n. (1982), voids any stipulation to "waive compliance with any provision" of the Securities Act.

In *Shearson/American Express v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Supreme Court cast serious doubt on the continued viability of *Wilko.* The Court held that when in accordance with arbitration agreements, parties must arbitrate claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* The Court did not explicitly overrule *Wilko,*[1] but its analysis did seriously undermine the holding.

In *McMahon,* the Court held that the conclusion in *Wilko* was based on the Court's belief that a judicial forum was needed to protect the substantive rights created by the Securities Act; arbitration was inadequate to enforce those rights. Thus, the Court held that *"Wilko* must be read as barring waiver of a judicial forum only where arbitration is inadequate to protect substantive rights at issue." In assessing the arbitrability of claims under the 1934 Act, the *McMahon* Court could no longer justify the *Wilko* Court's concerns with the ineffectiveness of arbitration: "The mistrust of arbitration that formed the basis for the *Wilko* opinion in 1953 is difficult to square with the assessment of arbitration that has prevailed since that time." *Id.* 107 S.Ct. at 2341. Given this most recent position of the Court, it appears that if we were to read *Wilko* as summarily barring arbitration of all 1933 claims, we would apply a rule that the Court has emptied of all content. That situation has compelled several courts to reconcile *Wilko* and *McMahon* by concluding that the Court intends to preclude arbitration of 1933 Act claims only where there

---

1. The court wrote: "While stare decisis concerns may counsel against upsetting *Wilko's* contrary conclusion under the Security Act, we refuse to extend *Wilko's* reasoning to the Exchange Act." *McMahon,* 482 U.S. at ——, 107 S.Ct. at 2341.

is a showing that arbitration cannot adequately protect those claims.

In *Rodriguez De Quijas v. Shearson/Lehman Bros., Inc.*, 845 F.2d 1296, 1299 (5th Cir.1988) *cert. granted,* —— U.S. ——, 109 S.Ct. 389, 102 L.Ed.2d 379 (1988), the court held that *Wilko* is obsolete and thus § 12(2) claims are arbitrable. *See also, Noble v. Drexel, Burnham, Lambert, Inc.*, 823 F.2d 849, 850 n. 3 (5th Cir.1987) ("*McMahon* undercuts every aspect of *Wilko.* . . . A formal overruling of *Wilko* seems inevitable—or, perhaps, superfluous."). The *Rodriguez* court explained that because of the similarity of the two Acts, it is implausible to presume Congress intended that parties could arbitrate Exchange Act claims but not arbitrate Securities Act claims: "For the purposes of arbitration, similarities between the Securities Act and the Exchange Act outweigh any differences between them." *Rodriguez,* 845 F.2d at 1299. Analogously, in *Ryan v. Liss, Tenner & Goldberg Securities Corp.,* 683 F.Supp. 480 (D.N.J.1988), the court held that claims arising under § 17(a) of the 1933 Securities Act are arbitrable. The court reasoned that the similarities between the 1933 and 1934 Acts, especially with regard to the non-waiver provisions, compel the conclusion that the *McMahon* analysis applies to 1933 claims as well as 1934 claims. An agreement to arbitrate cannot be seen as a waiver of a substantive provision of either the 1933 or 1934 Acts. *Id.* at 484. Under a corresponding analysis, several other courts have also found that parties may now arbitrate 1933 claims. *See, Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 466 (10th Cir. 1988) (dicta); *Reed v. Bear, Stearns & Co. Inc.*, 698 F.Supp. 835 (D.Kan.1988); *Kavouras v. Visual Products Systems, Inc.*, 680 F.Supp. 205, 207 (W.D.Pa.1988); *Rosenblum v. Drexel Burnham Lambert, Inc.*, 700 F.Supp. 874 Fed.Sec.L.Rep. (CCH) ¶ 94,031 (E.D.La.1988); *Aronson v. Dean Witter Reynolds, Inc.*, 675 F.Supp. 1324, 1326 (S.D.Fla.1987); *Staiman v. Merrill Lynch, Pierce, Fenner &· Smith*, 673 F.Supp. 1009, 1011 (C.D.Cal.1987).

Despite the willingness of many courts to anticipate the demise of *Wilko*, other courts have felt compelled to apply the weakened precedent, albeit only to 1933 Act claims. For example, in *Chang v. Lin*, 824 F.2d 219, 222 (2d Cir.1987), the court held that because *McMahon* explicitly did not overrule *Wilko*, the plaintiff has the right to litigate 1933 claim in federal court. Similarly, in *Araim v. Painewebber, Inc.*, 691 F.Supp. 1415, 1418 (N.D.Ga.1988), the court held that *McMahon's* reference to *stare decisis* and the Supreme Court's traditional reluctance to reverse a longstanding interpretation of a statute did not permit the conclusion that the Supreme Court would overrule *Wilko* if given the opportunity. *See also, Schultz v. Robinson–Humphrey/American Express, Inc.*, 666 F.Supp. 219, 222 (M.D.Ga.1987); *Continental Service Life & Health Ins. Co. v. A.G. Edwards & Sons, Inc.*, 664 F.Supp. 997, 1001 (M.D.La.1987); *McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741, 743 (S.D.N.Y.1987); *Goldberg v. Drexel, Burnham, Lambert, Inc.*, 1987 Westlaw 31604 (E.D.Ill. Dec. 16, 1987).

Most significantly, in *Osterneck v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 841 F.2d 508 (3d Cir.1988) (Federal arbitration act preempted State Securities Act, and plaintiff compelled to arbitrate state claims along with 1934 Act claims), the Third Circuit has also taken the position that 1933 claims are not arbitrable: "As long as *Wilko* stands in the Supreme Court, agreements to arbitrate claims under the Securities Act of 1933 will remain unenforceable, but that is the only rule *Wilko* now stands for." While the result in *Osterneck* did not turn on this conclusion, the court made clear in dicta that *Wilko* remains viable. Thus, we will rely on this authority to conclude that this Circuit will not permit district courts to enforce agreements to arbitrate 1933 claims.[2]

---

**2.** We note that in *Johnson v. United Food and Commercial Workers, International Union Local No. 23*, 828 F.2d 961, 966 (3d Cir.1987) the Third Circuit in dicta wrote that the Supreme Court distinguished *Wilko* "almost to extinction." One could argue that this position is at odds with *Osterneck* and that it supports the arbitrability of 1933 Act claims. However, we can reconcile

Plaintiff also argues that his claims arising out of transactions within the CNB account should not go to arbitration. Specifically, plaintiff argues that the agreement which addresses the issue of arbitration does not apply to his account with CNB. We disagree.

The Securities Account Agreement signed by plaintiff covers "all of [his] accounts, in which [he] has an interest alone or with others, which [he has] opened or open in the future, with [Pru–Bache] for the purchase and sale of securities and commodities." In addition, the arbitration provision of this agreement covers "any controversy arising out of or relating to [his] account, to transactions with or for [him] or to this Agreement...." We find that for purposes of defining the limits of the arbitration clause, plaintiff, in granting authority to defendants to transact within his CNB account, in effect opened another account with Pru–Bache. In both accounts, plaintiff contracted for Pru–Bache and Harold Wenger to buy and sell certain securities; it is true that one account was held by Pru–Bache and the other by CNB, but the investment arrangement was basically the same. In the Securities Agreement and in the Options Agreement, the parties effectuated their intent to arbitrate disputes arising out of Pru–Bache's handling of plaintiff's accounts, and disputes arising out of "transactions with or for him." We consider defendants' transactions within the CNB account to be transactions for the plaintiff in an account controlled by Pru–Bache, a de facto Pru–Bache account. Thus, in light of the Supreme Court's counsel to favor arbitration where the scope of the agreement is ambiguous, we will read the language of the agreement broadly, and direct the parties to arbitrate the claims arising out of the activity of the CNB account.

### B. *Motion to Stay Discovery*

Defendants argue that we should stay discovery under the Federal Rules of Civil Procedure while the parties are arbi-

trating the controversy. Specifically, they argue that because the entire matter will go to arbitration, plaintiff can not use federal discovery to gather information for arbitration. In support of this contention defendant cites *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353, n. 17, 98 S.Ct. 2380, 2390, n. 17, 57 L.Ed.2d 253 (1978), in which the Supreme Court asserted that "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *See also, Levin v. Ripple Twist Mills, Inc.*, 416 F.Supp. 876, 880 (E.D.Pa.1976) (in a proceeding to compel arbitration, where other proceedings stayed, discovery not permitted into underlying grievance); *Suarez–Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (court reversed district court's decision to allow discovery to proceed during arbitration). In the case at bar, however, plaintiff's 1933 Act claims remain in federal court. Thus, discovery should proceed where it is relevant to those claims. Accordingly, defendant's motion to stay discovery is Denied.

An appropriate order follows.

### ORDER

AND NOW, this 21st day of December, 1988, upon consideration of MOTION TO STAY PROCEEDINGS filed by defendants on October 31, 1988, plaintiff's RESPONSE thereto filed on November 7, 1988, defendants' RESPONSE thereto filed on November 14, 1988, along with supplemental responses filed thereto, it is hereby ORDERED that defendants' motion is GRANTED in part and DENIED in part as follows:

1. We direct that Plaintiff's claims arising out of the CNB account go to arbitration pursuant to the parties' written agreement.

2. We direct that Plaintiff's claims arising under § 12(2) of the Securities Act of 1933 remain in federal court.

---

the two decisions by reading the qualifying "almost" as allowing *Wilko* its limited viability. Furthermore, although *Osterneck* did not refer

to *Johnson,* we nevertheless feel compelled to apply the clear dicta of the more recent decision.

In addition, upon consideration of MOTION TO STAY DISCOVERY filed by defendants on November 23, 1988, and plaintiff's RESPONSE thereto filed on December 2, 1988, it is hereby ORDERED that defendants' motion is DENIED.