### OLDE DISCOUNT CORPORATION

v.

**W. Michael TUPMAN, and as Deputy Attorney General of the State of Delaware; Richard W. Hubbard, Securities Commissioner of the State of Delaware; Eugene H. Engelhardt and Carol D. Engelhardt,**

**W. Michael Tupman, individually and as Deputy Attorney General of the State of Delaware; Richard W. Hubbard, Securities Commissioner of the State of Delaware; Eugene H. Engelhardt, Carol D. Engelhardt, Appellants.**

No. 92–7557.

United States Court of Appeals, Third Circuit.

Argued June 10, 1993.

Decided July 30, 1993.

As Amended Aug. 5, 1993.

Sur Petition for Rehearing Aug. 26, 1993.

Richard E. Fairbanks, Jr. (argued), Chief of Appeals Div., Loren C. Meyers, Deputy Atty. Gen., DE Dept. of Justice, Wilmington, DE, for appellants.

James S. Green, Duane, Morris & Heckscher, Wilmington, DE, Robert P. Bramnik (argued), Thomas P. Fitzgerald, Michael I. Behn, Altheimer & Gray, Chicago, IL, for appellee.

Joseph C. Long, 300 Timberdell Road, Norman, OK, for amici curiae North American Securities Administrators Ass'n, Inc. and Nat. Consumers League.

Before: GREENBERG, NYGAARD and ROSENN, Circuit Judges.

## OPINION

GREENBERG, Circuit Judge.

This case presents a novel question of the relationship between a contracting party's right to enforcement of an arbitration agreement under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (FAA), and a state's interest in pursuing a remedy of rescission in an administrative proceeding. The district court enjoined the Delaware securities commissioner from seeking rescission on behalf of two investors who had entered into a predispute arbitration agreement. 805 F.Supp. 1130. We will affirm the district court's order. Judge Greenberg votes to affirm on the grounds that the FAA preempts Delaware's rescission remedy in

these circumstances and this opinion reflects the reasons why he has reached this conclusion. Judge Rosenn votes to affirm on the ground that the rescission remedy is barred by reason of contract law as set forth in his separate concurring opinion. Judge Nygaard dissents on this issue for the reasons set forth in his separate opinion. We unanimously hold that this claim, *i.e.*, that a state statute is preempted to the extent it authorizes relief in conflict with rights secured by the FAA, necessarily falls within an exception to the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## I.  BACKGROUND

Appellee Olde Discount Corporation, a securities broker-dealer, is a Michigan corporation with its principal place of business in Detroit and numerous offices throughout the United States. Olde Discount is registered in Delaware as a broker-dealer and has an office in Wilmington. Appellants Eugene and Carol Engelhardt are former customers of Olde Discount. The Engelhardts, then Michigan residents, opened a brokerage account with Olde Discount's Detroit office in 1983. When they moved to Wilmington in 1986, the Engelhardts transferred their account to its Wilmington office.

Olde Discount is primarily, as its name implies, a discount broker. It also makes a market in a few selected stocks; at the times relevant to this action, Second National Federal Savings Bank (SNFS) was among those stocks. Allegedly at the instance of Olde Discount's Wilmington office manager, Michael Donohoe, the Engelhardts purchased 5,000 shares of SNFS stock on May 15, 1990. On May 25, 1990, the Engelhardts signed an account agreement with Olde Discount that required them "to submit any and all controversies or claims arising out of the relationship established by this agreement to arbitration to be conducted according to the rules and procedures of the New York Stock Exchange, Inc. (NYSE) or of the National Association of Securities Dealers, Inc. (NASD)...." Investors Account Agreement, ¶ 18, J.A. at 53. Also on May 25, 1990, the Engelhardts provided Olde Discount with

a "customer preference profile" that expressed their interest in "aggressive" investments for the purposes of "growth" and "speculation." J.A. at 48. On June 6, 1990, the Engelhardts purchased an additional 5,000 shares of SNFS. Thus, by early June 1990, the Engelhardts had purchased 10,000 shares of SNFS. These purchases cost the Engelhardts over $50,000.

The price of SNFS stock declined steadily during the summer and fall of 1990, as the bank suspended its dividend and came under the scrutiny of federal regulators because it failed to fulfill capital requirements. The Engelhardts, apparently because of their bad experience with this investment, terminated their Olde Discount brokerage account and removed their SNFS shares from Olde Discount on September 6, 1990. By then the Engelhardts' SNFS stock had declined in value to approximately $32,500.

Nearly a year later, in July 1991, the Engelhardts first contacted the Division of Securities of the Delaware Department of Justice with a complaint about their purchase of SNFS stock from Olde Discount. The Division, primarily through appellant Michael Tupman, a Delaware Deputy Attorney General responsible for securities law enforcement, investigated the Engelhardts' complaint. In early June 1992, after the Division substantially had completed its investigation, it sent Olde Discount a draft "Notice of Intent to Suspend or Revoke Broker–Dealer Registration." The draft Notice of Intent alleged that Olde Discount and its agent Donohoe had engaged in fraudulent and unethical practices in connection with the sales of SNFS stock to the Engelhardts, in violation of Del.Code Ann. tit. 6, §§ 7303(2) and 7316(a) (1974 & Supp.1992).

In particular, the Notice asserted that Donohoe repeatedly had urged the Engelhardts to invest in SNFS and had made false statements of material fact about the stock. Further, the Notice alleged that Olde Discount had not kept the Engelhardts advised of information that could have been pertinent to their decision whether to hold or sell the stock. The Notice indicated that the Delaware securities commissioner sought the remedies of suspension or revocation of Olde

Discount's broker-dealer registration and imposition of fines; and, central to the preemption question in this case, that the commissioner would seek rescission of the SNFS stock transactions between Olde Discount and the Engelhardts, as authorized by Del. Code Ann. tit. 6, § 7325(b). The Notice, however, did not suggest that either Olde Discount or Donohoe had violated any duty to customers other than the Engelhardts; the Notice thus proposed individual relief for the Engelhardts only.

During the summer of 1992, the Division of Securities and Olde Discount tried to negotiate a settlement of the proposed charges. Ultimately Olde Discount, desiring to bring the settlement negotiations to fruition, offered to pay $15,000 to the Delaware Investors Protection Fund and to pay $20,375 to the Engelhardts.[1] The proposed payment to the Engelhardts represented the difference between the total price they had paid for the SNFS stock, and its value of approximately $32,500 on September 6, 1990, when the Engelhardts had closed their brokerage account with Olde Discount.

The appellants do not dispute that Tupman agreed in principle to accept $15,000 in partial settlement of the Division's proposed charges. Nevertheless, Tupman insisted that Olde Discount also must rescind the Engelhardts' SNFS purchases. This demand was not acceptable to Olde Discount, which apparently had consistently maintained that the securities commissioner could not properly pursue a rescission, because Olde had a contractual right to arbitrate the Engelhardts' claims. Tupman, however, viewed Olde Discount's claims of its contractual right to arbitration and of the federal preemption of Delaware's rescission remedy as "baffling." *See* Tupman's August 7, 1992 letter to Olde Discount, J.A. at 111. He

consequently would not abandon the demand that it rescind the SNFS sales to the Engelhardts.

Olde Discount determined to pursue its right to arbitration, and served the Engelhardts with a demand to arbitrate on August 5, 1992. Shortly thereafter, on August 17, 1992, Tupman issued the Notice of Intent in substantially the same form as the June 1992 draft, *i.e.,* including the demand for rescission of the Engelhardts' SNFS transactions. Notice of Intent, ¶ 43, J.A. at 139. The Notice provided that Olde Discount would be entitled to a hearing before the Delaware securities commissioner if it made a written request within 30 days. However, if Olde Discount did not request a hearing, the allegations would be deemed admitted and the commissioner would issue a final order of suspension, revocation, rescission, fine and/or costs.

On August 25, 1992, Olde Discount commenced this action against Tupman, Delaware Securities Commissioner Richard W. Hubbard, and the Engelhardts. The complaint's four counts alleged that: (1) the rescission remedy of Del.Code Ann. tit. 6, § 7325(b), as applied by the defendants, circumvents Olde Discount's rights under the FAA and thus violates the Supremacy Clause; (2) the application of Del.Code Ann. tit. 6, § 7325(b), to Olde Discount's transactions with the Engelhardts in SNFS stock would constitute an *ex post facto* punishment in violation of the Due Process Clause;[2] (3) Tupman and Hubbard had violated 42 U.S.C. § 1983 by employing the Delaware securities laws in a manner that impaired Olde Discount's federal constitutional and statutory rights; and (4) Tupman's actions constituted a common law abuse of process. Olde Discount sought an injunction, a declaratory

---

1. In their opening brief, the appellants asserted that the district court's consideration of events that occurred during settlement negotiations was contrary to Fed.R.Evid. 408, which prohibits the admission of "[e]vidence of conduct or statements made in compromise negotiations...." However, as counsel for Olde Discount has noted, the appellants have not preserved this evidentiary point because they did not object to the introduction of these facts before the district court. In any event, these facts are background

information, helpful to an understanding of the context of the dispute; they are not critical to our disposition, as we anchor our result on legal principles.

2. Olde Discount contends that at the time of its transactions with the Engelhardts, Delaware law did not provide for a rescission remedy in proceedings concerning suspension or revocation of the registration of a broker.

judgment, compensatory damages, and punitive damages.

Olde Discount most immediately was concerned with preserving its federal right to arbitration of the Engelhardt dispute. It therefore vigorously pressed for a preliminary injunction to halt further proceedings before the Delaware Division of Securities. After expedited briefing and argument, the district court, by order dated September 16, 1992, accompanied by a comprehensive memorandum opinion, partially granted Olde Discount's motion for preliminary relief, enjoining "the Securities Commissioner[ ] [from pursuing] a rescission action under [Del.Code Ann. tit. 6, § 7325(b) ] on behalf of defendants Engelhardt, individual investors who are parties to a predispute arbitration agreement with plaintiff, which agreement is enforceable under the Federal Arbitration Act, 9 U.S.C. § 2." In its opinion, the district court determined that the FAA preempted the Delaware rescission remedy. Furthermore, the district court declined to abstain under *Younger* from issuing injunctive relief. Tupman, Hubbard, and the Engelhardts jointly appealed from the September 16, 1992 order, contending that the district court "erred as a matter of law" both in declining to abstain under *Younger* and in holding that the rescission remedy was preempted.

## II. JURISDICTION AND STANDARD OF REVIEW

■ Before turning to the merits of the preemption and abstention issues, we must resolve a challenge to our jurisdiction raised by Olde Discount. It argues that the appeal is from an interlocutory order "directing arbitration to proceed," which is specifically nonappealable under 9 U.S.C. § 16(b)(2). However, contrary to Olde Discount's characterization, · the district court's order in this case is not an order "directing arbitration to proceed." Rather, the district court directed the Delaware securities commissioner not to pursue a remedy of rescission in the administrative proceedings. Thus, the order falls within the usual rule of 28 U.S.C. § 1292(a)(1), which permits immediate appeals from "[i]nterlocutory orders ... granting [or] refusing ... injunctions."

■ Our review of a determination regarding preliminary injunctive relief is limited to examining whether the district court abused its discretion, committed an obvious error in applying the law, made a clear mistake in considering the proof, or improperly applied the law to the facts. *Kreimer v. Bureau of Police of Morristown*, 958 F.2d 1242, 1250 n. 9 (3d Cir.1992); *Philadelphia Marine Trade Ass'n v. Local 1291, Int'l Longshoremen's Ass'n*, 909 F.2d 754, 756 (3d Cir.1990), *cert. denied*, 498 U.S. 1083, 111 S.Ct. 953, 112 L.Ed.2d 1041 (1991). This standard requires a plenary review here, as the appellants contend that the district court erred as a matter of law in entering the injunction. We also exercise plenary review over the abstention question because we are resolving that issue by making a legal determination. *General Glass Indus. Corp. v. Monsour Medical Found.*, 973 F.2d 197, 200 (3d Cir.1992); *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1199 (3d Cir.1992).

## III. PREEMPTION

The Supremacy Clause allows Congress to preempt state legislation if it so intends.[3] *See United States Dep't of Treasury v. Fabe*, — U.S. —, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). The development of the law of federal preemption has defined three ways of discerning a congressional intent to preempt state law: express or explicit preemption, implied preemption, or "actual conflict" preemption. The Supreme Court thus has differentiated among the three types of preemption:

> Congress explicitly may define the extent to which its enactments pre-empt state law.... In the absence of explicit statutory language, however, Congress implicitly may indicate an intent to occupy a given field to the exclusion of state law. Such a purpose properly may be inferred where the pervasiveness of the federal regulation precludes supplementation by the states,

---

**3.** While as a matter of convenience this section of the opinion entitled "III. PREEMPTION" is written as if for the court, it in fact is the opinion only of Judge Greenberg.

where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose'.... Finally, even where Congress has not entirely displaced state regulation in a particular field, state law is pre-empted when it actually conflicts with federal law. Such a conflict will be found ' "when it is impossible to comply with both state and federal law ... or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress...." '

*Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299–300, 108 S.Ct. 1145, 1150–51, 99 L.Ed.2d 316 (1988) (citations omitted).

The preemption claim before us is that the FAA demands enforcement of an agreement to arbitrate which cannot be abrogated by a state agency's pursuit of an administrative remedy that would duplicate the .remedy sought in an arbitration. Section 2 of the FAA, 9 U.S.C. § 2, directs the enforcement of arbitration agreements as broadly as Congress' powers under the Commerce Clause permit:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Olde Discount contends that the FAA's directive compels enforcement of the arbitration clause of the Engelhardts' account agreement. Thus, if the Delaware securities commissioner pursues rescission in the administrative proceeding, Olde Discount's federal right to arbitration would be impaired, as the merits of the claim that the arbitration agreement reserves for an arbitral forum will be resolved administratively.

Yet it is clear that the FAA does not explicitly preempt any particular remedy that might be sought in state administrative proceedings. Nor does the FAA entirely occupy the field of securities regulation so as to give rise to implied preemption; to the contrary, both the Securities Act of 1933 and the Securities Exchange Act of 1934 specifically preserve the traditional rights of the states to regulate securities transactions within their own jurisdictions. *See, e.g.*, 1933 Act, 15 U.S.C. § 77r ("[n]othing in this subchapter shall affect the jurisdiction of the securities commission ... of any State or Territory ... over any security or any person"); 1934 Act, 15 U.S.C. § 78bb(a) ("[n]othing in this chapter shall affect the jurisdiction of the securities commission ... of any State over any security or any person insofar as it does not conflict with the provisions of this chapter"). In fact the FAA is not concerned in particular with securities regulation, as 9 U.S.C. § 2 deals generally with contracts involving commerce. Therefore, to preserve its right to a meaningful arbitral forum Olde Discount relies on the third type of preemption, "actual conflict" preemption.

There can be "actual conflict" preemption in two circumstances, either where it is impossible to comply with the conflicting demands of federal and state statutes, or where the state law is an "obstacle" to the fulfillment of the congressional purposes embodied in the federal law. *See, e.g., Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) (holding federal regulation concerning maturity of avocados did not preempt California regulation, where it was not impossible for growers to comply with both regulations); *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) (holding federal Alien Registration Act preempted Pennsylvania Alien Registration Act because state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); *Pennsylvania Medical Soc'y v. Marconis*, 942 F.2d 842, 848 (3d Cir.1991) (holding Pennsylvania statute governing limited aspects of Medicare billing not preempted by federal Medicare Act because state statute did not create obstacle to fulfillment of Congress' objectives). As our analy-

sis of the interaction between the Delaware administrative rescission remedy and Olde Discount's arbitration agreement with the Engelhardts will make clear, both factors indicating conflict preemption, conflicting statutory demands and an obstacle to Congress' purposes, are present in this case.

The context of this preemption claim, *i.e.*, the preservation of a federal right to an arbitral forum, is critical. At one time other substantive and procedural rights of parties were thought to outweigh a right to arbitration. *See Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (stating Securities Act of 1933 precluded waiver of judicial forum, rendering arbitration agreement invalid). But that time is no more. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (overruling *Wilko v. Swan*). The Supreme Court unstintingly has promoted a favorable climate for arbitration through vigorous enforcement of the FAA over the last 20 years. The gradual erosion of the principles of *Wilko v. Swan* began with the 1974 decision of *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270, which held that a claim under the Securities Exchange Act of 1934 would be arbitrable in the distinctive context of an international business transaction. The international character of the dispute was also an important consideration in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), which upheld an order compelling submission of Sherman Act claims to arbitration in Japan. More generally, *Mitsubishi* noted that there is "no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims." *Id.* at 625, 105 S.Ct. at 3353.

The Court moved beyond the specialized international context and enforced arbitration of 1934 Act claims and RICO claims, pursuant to a clause in a standard brokerage agreement, in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Shortly thereafter, the Court resolved the inconsistency between *McMahon* and *Wilko* by expressly overruling *Wilko* in *Rodriguez de Quijas.* Two Terms later, the Court extended the ascendancy of arbitration beyond commercial disputes to age-discrimination claims in *Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), which rejected the contention that the involvement of an agency, there the Equal Employment Opportunity Commission, in a scheme of enforcement created any impediment to the private arbitration of the claims arising in a particular case.

Two aspects of the development of the federal right to arbitration that we have traced are particularly noteworthy here. First, the arbitration of securities disputes now is not only permitted, but favored, under federal law, according to the line of decisions culminating in *McMahon* and *Rodriguez de Quijas. See also Osterneck v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 841 F.2d 508 (3d Cir.1988) (stating FAA preempts provision of Pennsylvania Securities Act purporting to preclude enforcement of agreements to arbitrate state law securities claims). Second, there is no longer any doubt that statutory claims are arbitrable, and the existence of an enforcing agency, as in *Gilmer*, does not interfere with the arbitrability of individual claims. Similarly, it is clear that state statutory claims, as well as federal statutory claims, are subject to the federal right to an arbitral forum. *See Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (holding FAA preempts California statutory provision requiring judicial forum for claims under California Franchise Investment Law); *Osterneck v. Merrill Lynch*, 841 F.2d at 512–13.

Thus, the claims that the Delaware Division of Securities is pursuing on behalf of the Engelhardts, *i.e.*, claims of fraudulent dealings in violation of Del.Code Ann. tit. 6, § 7303, certainly would be subject to arbitration if pursued by the Engelhardts themselves. *See* Del.Code Ann. tit. 6, § 7323 (creating private right of action for securities fraud). However, the appellants argue that for preemption purposes we must distinguish between the advancement of essentially identical claims on the basis of whether their proponent is a state agency or a private

litigant. The appellants contend that the state's enforcement action implicates the public interest, and not simply the rights of the Engelhardts. Further, the appellants cite *Gilmer* for the proposition that "arbitration agreements will not preclude [an administrative agency] from bringing actions seeking class-wide and equitable relief." —— U.S. at ——, 111 S.Ct. at 1655. In the appellants' view, the agency's pursuit of "equitable relief" sanctioned in *Gilmer* should include the remedy of rescission of specific trades of securities sought in this case. The appellants view the rescission remedy as an integral component of the state's regulation of securities transactions which, they argue, should not be weakened by the application of federal preemption.

However, we think the rescission remedy as applied here necessarily would render Olde Discount's right to arbitration meaningless. The particular remedy therefore must fall before the conflicting right to an arbitral forum granted by the FAA. The FAA's fundamental purpose was to create "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. at 10, 104 S.Ct. at 858. Yet the Delaware Division of Securities claims that it must be permitted to adjudicate administratively the very same questions regarding Olde Discount's sale of SNFS stock to the Engelhardts, that the Engelhardts themselves could pursue only within an arbitration. In that regard, Delaware has interfered with Olde Discount's right under the FAA to resolution of these issues through arbitration. Therefore, in the application here of the rescission remedy of Del. Code Ann. tit. 6, § 7325(b), Delaware has created an "obstacle to the accomplishment

and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. at 67, 61 S.Ct. at 404.

The very community of interest between the state appellants and the Engelhardts implicitly demonstrates that the administrative proceedings are an obstacle to Congress' purpose in adopting the FAA. Clearly the Engelhardts are relying on the state appellants to obtain a remedy that would frustrate the arbitration. As the appellants acknowledge, the administrative proceedings were initiated on the complaint of the Engelhardts. Indeed, the Notice of Intent issued to Olde Discount was concerned exclusively with dealings between Olde Discount and the Engelhardts. Furthermore, Tupman filed this appeal on behalf of the Engelhardts, who are not represented by separate counsel on appeal, and were not so represented in the earlier settlement negotiations with Olde Discount. In the circumstances, the state administrative proceedings, to the extent they concern claims and liabilities between the Engelhardts and Olde Discount, are nothing other than a substitute for the arbitration.

The circumstance that the state appellants are not parties to the arbitration clause does not alter our result. As the Supreme Court explained in *Moses H. Cone Memorial Hospital*, "[u]nder the Arbitration Act, an arbitration must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." 460 U.S. at 20, 103 S.Ct. at 939. In partial reliance on *Moses H. Cone*, we recently upheld a district court's eviction of a subtenant to facilitate an award arising from an arbitration between the property owner and the tenant, even though the subtenant was not a party to the arbitration. *See Isidor Paiewonsky Assocs. v. Sharp Properties, Inc.*, 998 F.2d 145 (3d Cir.1993).[4]

It is also apparent that, in any practical sense, Olde Discount cannot simultaneously arbitrate its claims against the Engelhardts and defend against the Delaware securities commissioner's pursuit of the rescission remedy in an administrative proceeding. Not-

---

4. We are not suggesting that an award in an arbitration proceeding would be preclusive in administrative proceedings; that issue is not presented by this appeal.

withstanding the appellants' statement that they will not, and cannot, prevent Olde Discount from commencing the arbitration, the appellants' view of a possible harmonious interaction of the state and federal statutes is illusory. While in a physical sense Olde Discount could be represented in two proceedings at once, the potential for actual conflict in that scenario is manifest. If an arbitration panel decides that the Engelhardts' claims are without merit and Olde Discount has no liability to them, while the Delaware securities commissioner concludes that the SNFS purchases must be rescinded, the results of the proceedings will be irreconcilable.

Even if the two proceedings were to reach similar results on the merits, Olde Discount still would be deprived of its right to the presumed simplicity and efficiency of the arbitral forum. Thus, to the extent rescission is involved, it is impossible to fulfill the demands of both the federal and state statutes. Therefore, Delaware's pursuit of the rescission remedy is preempted by the FAA both because Del.Code Ann. tit. 6, § 7325(b) presents an obstacle to the accomplishment of the congressional purpose of enforcing arbitration agreements, and because it is impossible to give effect to both the administrative rescission remedy and the federal right to arbitration.

We also reject the appellants' contention that an administrative rescission remedy is not preempted because *Gilmer* sanctions "equitable relief" by an agency despite a parallel arbitration of private claims. First, *Gilmer* on its facts did not address a question of equitable relief and its statements thereon are not dispositive of how the Supreme Court might resolve an actual controversy involving private arbitration and an agency's "equitable" remedies. Second, we believe the precise statement in *Gilmer*, *i.e.*, "that arbitration agreements will not preclude the EEOC

from bringing actions seeking class-wide and equitable relief," —— U.S. ——, 111 S.Ct. at 1655, was meant to draw a distinction between private remedies available in arbitration for one employee, versus remedies available through an action of the EEOC for a group of employees. In other words, the reference in *Gilmer* to class-wide equitable relief apparently was directed toward a situation where the EEOC could bring its enforcement powers to bear against an employer violating the law in its dealings with numerous employees by, for example, seeking an injunction on behalf of a class of employees against future acts of age discrimination. The analog in our case would be that the Delaware Division of Securities, if convinced that Olde Discount has committed widespread violations beyond those alleged in relation to the Engelhardts' stock purchases, is free to protect Delaware investors by imposing fines or licensing restrictions on Olde Discount, regardless of the progress or outcome of any arbitration of the Engelhardts' claims.[5] Thus, there is no foundation for appellants' assertion that *Gilmer* establishes that the state's interest in the "equitable" remedy of rescission should be given special exemption from standard preemption principles.

While our analysis might be different if a finding of preemption were to work a substantial interference with traditional state objectives of securities law enforcement, that is not the case here. The district court did not enjoin the Delaware securities commissioner from investigating Olde Discount or from pursuing administrative remedies other than rescission of the Engelhardts' purchases. Accordingly, Delaware may take whatever action it sees fit consonant with federal law, concerning Olde Discount's state registration as a broker-dealer.[6] Delaware is also free to pursue individualized remedies, including rescission, as to securities transactions not sub-

---

**5.** It is conceivable that in the case of widespread violations of uniform character, *e.g.*, the distribution of fraudulently issued securities, individualized relief for members of a victimized class of customers might be possible notwithstanding the presence of arbitration agreements, on a theory that the violations did not arise from the particular relationship between the customer and the broker. We, of course, state no opinion on that possibility as it is not before us. In this case, the Notice of Intent was predicated on Olde Dis-

count's and Donohoe's alleged individual maltreatment of the Engelhardts, which the Notice described in great detail.

**6.** On December 7, 1992, the Division of Securities initiated a second proceeding against Olde Discount and Donohoe by reason of alleged improprieties in their dealings with other investors in SNFS stock. We are not concerned with those proceedings in this opinion.

ject to arbitration agreements.[7] Delaware therefore retains many avenues for the exercise of its proper role in dealing with alleged violations of its securities laws. Thus, federal preemption of the rescission remedy for investors who have agreed to arbitration will narrow but not eliminate the state regulators' choices of means of enforcement of the Delaware securities laws.[8]

## IV. ABSTENTION

■ The appellants argue, aside from the merits of the preemption question, that the district court should have abstained from granting an injunction that will interfere with Delaware's ongoing administrative proceedings against Olde Discount. The district court concluded that the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, was not applicable to Olde Discount's preemption claim under the FAA. We agree with the district court's resolution. Indeed, the circumstances presented make clear that a nonfrivolous claim of FAA preemption of a state statutory remedy necessarily presents an exception to the *Younger* doctrine.

■ *Younger* established that, despite the assertion of claims based on the federal constitution or federal statutes, a federal court should not enjoin pending state proceedings where three elements are present: (1) the ongoing state proceedings are "judicial" in nature; (2) the proceedings implicate important state interests; and (3) the proceedings afford an adequate opportunity to raise the federal claims. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,*

457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Nevertheless, the Supreme Court has emphasized that a court should abstain only in rare cases.

> The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in ... exceptional circumstances....

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 14, 103 S.Ct. at 936 (quotation marks omitted).

The Court recently reiterated the exceptional quality of abstention in *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). The Court noted that abstention is confined to rare circumstances because it runs counter to "the proposition that federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred.... 'They cannot abdicate their authority or duty in any case in favor of another jurisdiction.' " *Id.* 491 U.S. at 359, 109 S.Ct. at 2512–13 (quoting *Chicot County v. Sherwood*, 148 U.S. 529, 534, 13 S.Ct. 695, 697–98, 37 L.Ed. 546 (1893)). Those principles enunciated in *New Orleans Public Service* guided our approach in *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195. In *Gwynedd,* mindful that "a federal court has no authority to abstain from the exercise of jurisdiction that has been properly conferred," *id.* at 1199, we partially reversed the district

---

7. Although the appellants seem not to have stressed this point before the district court, the Engelhardts' initial purchase of 5,000 shares of SNFS stock on May 15, 1990, was before they signed the account agreement containing the arbitration clause on May 25, 1990. The district court did not take this sequence of events into account in reaching its result and neither will we as there is no issue as to the arbitrability of disputes arising from that purchase before us on this appeal. Nevertheless the district court's order of September 16, 1990, by its terms enjoins the commissioner from pursuing a rescission remedy for the May 15, 1990 purchase of SNFS stock. Thus, we do not preclude the appellants on remand from seeking an order modifying the preliminary injunction so as to exclude that purchase.

8. The amici curiae in their brief contend that the district court's opinion could have a major impact in "the criminal law area" because of an increasing tendency for courts to impose restitution as part of a sentence. They suggest that if we affirm the district court's order, the state "could not seek nor could the court grant such relief where the defendant had entered into an arbitration agreement with his victims." Brief at 8. We, of course, cannot rule on what the law would be in the situation the amici describe. However, it is apparent that a case involving a criminal conviction is distinguishable from that involved here. In this case the administrative proceeding was in part brought for the express purpose of obtaining a rescission remedy. On the other hand, a criminal case is brought to determine whether a defendant is criminally liable and, if so, to fix the penalty for the violation.

court's dismissal of a complaint alleging federal constitutional claims concerning municipal land-use regulatory decisions that were concurrently the subject of state court and municipal zoning board proceedings.

■ Notwithstanding the strict limits of abstention, the doctrine, where appropriate, forbids injunctive interference with state administrative proceedings as well as state court proceedings, though *Younger* itself forbade an injunction against a state criminal prosecution. In *Middlesex County Ethics Committee,* which upheld a district court's refusal to enjoin a state bar disciplinary proceeding on the grounds that the New Jersey Supreme Court would review the plaintiff's federal constitutional claims, the Court made explicit that "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." 457 U.S. at 432, 102 S.Ct. at 2521. In *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the Court again endorsed *Younger* abstention in relation to an ongoing state administrative proceeding. In that case, a religious school sought a federal injunction on First Amendment free-exercise grounds against the state's investigation of a sex-discrimination complaint. The Court found that the third requisite of the *Younger* doctrine, availability of an opportunity to raise federal claims, was provided because the school's "constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Id.* at 629, 106 S.Ct. at 2724.

It is therefore clear that conceptually *Younger* abstention can apply to the situation raised by Delaware's administrative proceedings against Olde Discount. The investigation and pending hearing by the Delaware securities commissioner is an ongoing state proceeding, "judicial" in nature, within the meaning of *Younger, Middlesex County,* and *Dayton Christian Schools.* Delaware's proceeding also undoubtedly serves the important state interest of regulating securities transactions, insofar as such power of regulation is reserved to the states under both the Securities Act of 1933 and the Securities Exchange Act of 1934. *See* 15 U.S.C. §§ 77r, 78bb(a). Finally, even if the Delaware Division of Securities has reached a conclusion that its pursuit of a rescission remedy is not preempted by the FAA, under *Dayton Christian Schools* it would be sufficient that Olde Discount could raise its preemption arguments again in a review of the administrative proceedings by the Delaware Court of Chancery. *See* Del.Code Ann. tit. 6, § 7324(a).

■ However, our conclusion that this situation formally fits within a *Younger* framework does not end our abstention inquiry, for *Younger* abstention is not always appropriate even if its elements are present. Thus, if "a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation ·of federal rights." *Wooley v. Maynard,* 430 U.S. 705, 710, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977); *see also Dayton Christian Schools,* 477 U.S. at 626, 106 S.Ct. at 2722 (interpreting *Younger* to prevent injunctions against state proceedings "except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury"); *Harman v. Forssenius,* 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50 (1965) (stating that district court properly refused to abstain "[g]iven the importance and immediacy of the problem, and the delay inherent" in awaiting guidance from state courts). We addressed a similar situation of immediate need for intervention by a federal court in *Ford Motor Co. v. Insurance Commissioner,* 874 F.2d 926 (3d Cir.1989). There, various insurers brought a preemption challenge to a Pennsylvania statute that prohibited the insurers from owning interests in savings and loan institutions. We applied the counsel of *Wooley v. Maynard* to articulate an exception to the *Younger* doctrine for state civil as well as criminal proceedings, in instances where "deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." *Id.* at 932.

Delaware's insistence upon the rescission remedy presents just such an immediate potential for irreparable harm to Olde Discount's right under the FAA to an arbitral forum. The Delaware regulators have chosen to stand firm in their pursuit of administrative rescission despite Olde Discount's repeated invocation of the FAA, its efforts to

commence an actual arbitration with the Engelhardts, and the district court's suggestion that the issue of rescission could be bifurcated from the state's determination concerning other proposed remedies.[9]

Indeed the very nature of arbitration demonstrates the irreparable harm Olde Discount faces, for its right to arbitration is a contractual right, sanctioned by statute, to have claims addressed in a particular forum. Thus, if the district court abstained in this case it would not simply be declining to exercise its statutorily created jurisdiction, which is the usual consequence of abstention. Rather, it would be refusing to protect Olde Discount's access to the forum that it and the Engelhardts contractually selected to resolve their disputes.

Furthermore, Olde Discount's right to arbitration cannot be satisfied if an alternate administrative forum is determining at the same time whether a claim to the identical remedy is available. The concern underlying a federal right to enforcement of arbitration agreements is a party's entitlement to a proceeding and a forum that are, at least ideally, speedy, efficient, and simpler than litigation in the courts or before agencies. *See Rodriguez de Quijas*, 490 U.S. at 479–80, 109 S.Ct. at 1919; *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354. Therefore, in the context of arbitration, a litigant's procedural right to the agreed forum is raised to a substantive right by the FAA. Accordingly, if Olde Discount were forced to address rescission of its sales to the Engelhardts in an administrative proceeding, even if it simultaneously could pursue an arbitration, it would suffer an immediate, irreparable harm to the federal right established by the FAA.

We find authority that *Younger* abstention would be inappropriate here in *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852.

In *Southland* the Supreme Court determined to take jurisdiction over the appeal precisely because of the immediacy of the harm suffered by a party denied a right to arbitration. The California Supreme Court had held that the FAA did not preempt a California statute requiring a judicial forum for certain franchise claims, and had remanded the case to the state trial court for a disposition on the merits. Despite the remand, which arguably rendered the state court's decision not final, the Supreme Court took jurisdiction, reasoning that "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." 465 U.S. at 6–8, 104 S.Ct. at 856–57. In this case, abstention would have precisely the same consequence, *i.e.*, it would permit the Engelhardts' claims to be brought before the Delaware securities commissioner, thus circumventing the agreement to arbitrate. We think *Southland* teaches that the federal courts ought not countenance such frustration of the FAA's mandate.

We also point out that abstention in this case would be difficult to justify in light of the congressional intent reflected in 9 U.S.C. § 16. That section provides that while orders compelling arbitration are not immediately appealable, orders denying motions to compel arbitration or to stay judicial proceedings pending arbitration are immediately appealable. This dichotomy reflects the paramount importance that Congress has placed on arbitration. In effect, Congress has given the courts of appeals broad authority to ensure that district courts are not circumscribing the rights granted by the FAA in a manner contrary to the expansive enforcement of arbitration clauses that has been dictated by Congress itself and by the Su-

---

**9.** Tupman, appearing for the State at the district court's August 27, 1992 hearing, rejected any separation of the rescission question from the State's broader proceedings:

> THE COURT: Mr. Tupman, just a comment or two. I do have a question for you:
> Aside from Paragraph 42 of your notice of intent to suspend or revoke, is there any reason why the public regulatory part of the Commission's prosecution can't be bifurcated from the [rescission] remedy ... ?

> MR. TUPMAN: .... [S]ince the statute and the General Assembly do clearly contemplate that all of this will be resolved in a single administrative proceeding, I don't think that it is—serves any interest, since, as we contend there's no impairment of the arbitration agreement. If they want to go to arbitration, they can go to arbitration. I can't stop them.

Supplemental App. at 92–93.

preme Court in, *e.g., McMahon, Rodriguez de Quijas,* and *Gilmer.*

We are mindful that generally a claim of federal preemption, in and of itself, is not entitled to more deferential treatment than other constitutional claims in the face of an abstention challenge. The Supreme Court said as much in *New Orleans Public Service:*

There is no greater federal interest in enforcing the supremacy of federal statutes than in enforcing the supremacy of explicit constitutional guaranties, and constitutional challenges to state action, no less than preemption-based challenges, call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action. Yet is clear that the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction.

491 U.S. at 365, 109 S.Ct. at 2516.

In *New Orleans Public Service,* the Court ultimately found that the district court should not have abstained. However, the Court did not conclude that simply because the case implicated findings of the Federal Energy Regulatory Commission which preempted a decision of local rate-making authorities, a blanket exception to *Younger* principles was warranted. *See also Ford Motor Co.,* 874 F.2d at 934 ("there is no absolute rule prohibiting the application of *Younger* abstention doctrine whenever the Supremacy Clause is invoked").

But in *New Orleans Public Service,* the Court did not confront a collision between the normal application of *Younger* principles and the highly favored right to arbitration which the Court itself has developed in FAA cases from *Scherk v. Alberto–Culver* through *Rodriguez de Quijas* and *Gilmer.* The collision is imminent in the present case, and we must resolve it by application of the Supreme Court's FAA cases and the Court's recognition in *Wooley v. Maynard* that, even when the *Younger* doctrine strictly might be applicable, a threat of immediate, irreparable harm to federal rights can warrant an injunction against state proceedings. We think that where, as here, a state agency is engaged in a course of action openly inconsistent with a litigant's rights under Section 2 of the FAA, that litigant cannot be turned away from federal court by an invocation of *Younger* abstention. This very narrow exception to *Younger* will not create difficulties in cases involving frivolous or weak claims of FAA preemption, because such claims would not meet the traditional requisites for injunctive relief and thus will not even require a district court to reach a *Younger* challenge.[10]

We make one final point. A district court's decision to abstain does not necessarily mean that a federal court will never consider the proffered federal claim. Rather, abstention delays the review by a federal court until a state forum has had an opportunity to pass on the issue. For example, if a criminal prosecution is claimed to violate federal free speech, free exercise, or due process rights, a defendant not satisfied by the state court's resolution of those claims ultimately can seek a federal forum by petition for certiorari or petition for writ of habeas corpus. In most—indeed, nearly all—circumstances in which the elements of *Younger* abstention are present, *Younger* counsels that such a delay is an appropriate price to pay for the preservation of comity between the federal government and the states.

In the context of arbitration, however, delayed enforcement destroys the federal statutory right. It would be incongruous if abstention, merely a prudential doctrine, could have such a consequence. In our case, the district court correctly did not abstain because the Delaware regulators' repeated rejection of Olde Discount's FAA preemption claim already ensured that the right to arbitration would be lost, absent a federal court's intervention. Accordingly, despite the rule of *Dayton Christian Schools* that a right to an ultimate state court appeal of agency action suffices to support *Younger* abstention,

---

**10.** In its opinion, the district court cited *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir.1989), with respect to the general showing that must be made by an applicant for a preliminary injunction to obtain relief. The appellants' brief is not cast in terms of whether the criteria have been met but instead focuses on the preemption and abstention issues. The brief of the amici, however, does discuss the *Instant Air Freight* criteria. In these circumstances, we will not discuss these criteria in detail but simply will indicate that in view of our conclusions we agree that the district court properly issued the preliminary injunction.

we hold that where Section 2 of the FAA provides the basis for a federal preemption claim, a district court may not abstain, but must address the merits of the FAA claim.

## V. CONCLUSION

In view of the aforesaid and Judge Rosenn's concurring opinion, we will affirm the district court's order of September 16, 1992, and will remand the case to the district court for further proceedings.

ROSENN, Circuit Judge, concurring.

Although I agree with Judge Greenberg's conclusion that the Delaware Securities Commissioner cannot seek rescission as a remedy under 6 Del.C. § 7325(b), I write separately because I arrive at this result by way of contract law rather than the doctrine of preemption.

When Congress enacted the Federal Arbitration Act (FAA), it rejected the traditional hostility of the courts towards arbitration as a remedy in civil disputes and emphasized a strong federal policy in favor of arbitral dispute resolution in cases where a contract exists evidencing a transaction involving commerce. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). In *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), a case similar to the one *sub judice* in that it involved a dispute over a purchase of securities through a broker-dealer, the Court held that the FAA requires district courts to compel arbitration of pendent arbitrable claims, even where the result would be the possible inefficient maintenance of separate proceedings in different forums. The Court observed:

> The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate ... at least absent a countervailing policy manifested in another federal statute. By compelling arbitration of state-law claims, a district court successfully protects the contractual rights of the parties and their rights under the Arbitration Act.

*Id.* at 221, 105 S.Ct. at 1242–43.

Significantly, the Court dwelt upon the necessity of enforcing the contractual rights of the parties under the agreement to arbitrate, also observing that "arbitration is not a judicial proceeding." *Id.* at 222, 105 S.Ct. at 1243 (citing *McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)). Thus, the right of a party to enforce an arbitration agreement under the FAA depends not upon the federal doctrine of preemption, but upon the traditional duty of the courts to protect the contractual rights of the parties.

In the present case, Olde's investors' account agreement with the Engelhardts contained a provision stating:

> You agree to submit any and all controversies or claims arising out of this agreement to arbitration to be conducted according to the rules and procedures of the New York Stock Exchange, Inc. (NYSE) or the National Association of Securities Dealers, Inc. (NASD) as you may elect....

The agreement further provides, "The parties are waiving their right to seek remedies in court, including the right to a jury trial."

Recently, in *Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, ——, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991) (citations omitted), the United States Supreme Court stated:

> It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA.... [B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.

Therefore, Olde and the Engelhardts lawfully bound themselves by the provisions of the agreement to arbitrate claims arising out of their securities transactions.

As noted by Judge Greenberg, section 7325's remedy of rescission would interfere with the contractually created arbitration agreement in this case. To the extent that the Engelhardts attempted an "end run" around the terms of the arbitration agreement by seeking relief in a state administrative proceeding, the district court properly restrained them. Federal courts will not

"permit a party to a contract to circumvent an arbitration clause by commencing litigation in a state court." *In re Mercury Constr. Corp.*, 656 F.2d 933, 941 (4th Cir.1981).

Finally, the mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration. For example, the Securities Exchange Commission is heavily involved in the enforcement of the Exchange Act of 1934 and the Securities Act of 1933, but we have held that claims under both of these statutes may be subject to compulsory arbitration. See McMahon; Rodriguez de Quijas.

*Gilmer,* —— U.S. at ——, 111 S.Ct. at 1653.

My disagreement with Judge Greenberg stems from my belief that the district court's injunction should not be based on preemption doctrine, but rather the law of contracts. The fundament of Olde's right to settle the Engelhardts' demand for rescission of the securities transaction by arbitration is the arbitration provision contained in the investors' account contract, not the application of the doctrine of preemption.

"[F]ederal pre-emption of state law can occur in three types of situations: where Congress explicitly pre-empts state law, where pre-emption is implied because Congress has occupied the entire field and where pre-emption is implied because there is an actual conflict between federal and state law." *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1120 (3d Cir.1990) (citing *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988)), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990).

The FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Sciences, Inc. v. Stanford University,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Nor has Congress occupied the entire field of securities regulation. *Merrill Lynch, Pierce, Fenner &*

*Smith, Inc. v. Ware,* 414 U.S. 117, 135, 94 S.Ct. 383, 393–94, 38 L.Ed.2d 348 (1973). The FAA, therefore, preempts a state securities law only "to the extent that it actually conflicts with federal law." *Volt,* 489 U.S. at 477, 109 S.Ct. at 1255.

In the case *sub judice,* however, the federal law and the state law do not conflict. The Delaware Statute does not even deal with arbitration, which is the subject of the FAA. Rather, the conflict in this case arises between the state statute, as it relates to rescission, and the parties' contractually created right to arbitrate disputes relating to the securities transaction. The FAA becomes relevant only as it protects the enforcement of the contractual right to arbitrate. Thus, there is no conflict for preemption purposes between a state law and a federal law in this case, but rather a partial remedial conflict between a state law and a contract. *Cf. Osterneck v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 841 F.2d 508, 510 (state statute precluding enforcement of an agreement to arbitrate conflicts with FAA).[1]

Therefore, for the foregoing reasons I would affirm the district court's order enjoining the Delaware Securities Commissioner from pursuing the remedy of rescission of the claims which are subject to the arbitration agreement between Olde and the Engelhardts. I agree with Judge Greenberg that the district court was not required to abstain from enjoining the Commissioner's pursuit of rescission.

NYGAARD, Circuit Judge, dissenting.

I disagree with the court's conclusion that the Federal Arbitration Act, 9 U.S.C. § 2, preempts 6 Del.Code Ann. § 7325(b) for essentially the same reasons articulated in Judge Rosenn's concurrence. There is no conflict between federal and state law because, as Judge Rosenn notes, the FAA protects the enforcement of the contractual right to arbitrate. Where there has been an allegation of securities fraud, section 7325(b) empowers the Delaware Securities Commission-

---

1. The agreement to arbitrate cannot usurp a state's public interest in enforcing its criminal laws for securities transactions violations or its laws enacted under its police power to protect the public interest generally. "The criminal justice system is not operated primarily for the

benefit of victims, but for the benefit of society as a whole." *Kelly v. Robinson,* 479 U.S. 36, 52, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986). Therefore, the district court was correct not to enjoin the Commissioner from seeking other penal remedies against Olde besides rescission.

er to seek rescission at his discretion and in the interest of the public; it says nothing about the validity of the arbitration agreement or the arbitrability of the dispute between Olde Discount and the Engelhardts. Since section 7325(b) does not "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration," *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984), the FAA does not preempt the Delaware statute.

I depart from the reasoning of the concurrence, however, to the extent it concludes that the Engelhardts have the capacity to contract away under Delaware law the Commissioner's authority to institute administrative proceedings and to seek remedies against securities firms doing business in Delaware. The essence of Olde Discount's argument is that there is no distinction between the Engelhardts' civil suit in their own interest to seek a compensatory award and the Commissioner's administrative actions in the public interest to seek appropriate equitable or punitive measures. This argument is unpersuasive in light of the statutory scheme.

The Delaware Securities Act was enacted "to prevent *the public* from being victimized by unscrupulous or overreaching broker-dealers, investment advisers or agents in the context of selling securities or giving investment advice, as well as to remedy any harm caused by securities law violations." 6 Del. Code Ann. § 7301(b) (emphasis added). The Commissioner administers the statute and serves this policy. Among other things, he may "deny, suspend or revoke any registration if he finds that the order is in the *public interest*," and he may in his discretion bring an action "to temporarily restrain or to enjoin the acts or practices ... [as well as seek] such other ancillary relief as is in the public interest...." *Id.* §§ 7316(a), 7320 (emphasis added). In section 7325(b), the Delaware legislature gave the Commissioner the exclusive power to bring administrative proceedings in which he may order the violator "to pay restitution and costs (or to rescind the transaction or transactions and pay costs) if the Commissioner finds it in the *public interest*...." (Emphasis added.) And in section 7323(a), the legislature also gave "the person" who is a victim of securities fraud a nonexclusive, private cause of action in law or equity.

Thus, the Delaware statutory scheme makes clear that the Commissioner is not a surrogate for a plaintiff's attorney, but is a public official who administers the state's blue sky laws "in the public interest" and is endowed with broad enforcement and rule-making powers. *See Blinder, Robinson & Co. v. Bruton*, 552 A.2d 466, 475 (Del.1989) ("The Commissioner has discretion to impose any penalty deemed necessary to protect the public interest and further the Act's prophylactic purpose."). Although the Engelhardts' and the Commissioner's suits arise from the same transaction, their respective right or power to sue arises from two separate and distinct statutory provisions.

The arbitration agreement between the Engelhardts and Olde Discount provides that the Engelhardts must "submit any and all controversies or claims arising out of this agreement to arbitration." It also provides, "*The parties* are waiving their right to seek remedies in court, including the right to a jury trial." Under the FAA and this arbitration agreement, there is no doubt that *the Engelhardts* cannot enforce a claim for legal damages or equitable relief under section 7323(a) in a judicial forum. But that is not at issue in this appeal because nothing in the Delaware laws precludes the Engelhardts and Olde Discount from arbitrating.

Here, Olde Discount contends, and the opinion of the court agrees, that the arbitration agreement between it and the Engelhardts precludes *the Commissioner*, acting under the authority of the Delaware legislature, from seeking appropriate remedies and sanctions in the public interest if the Engelhardts have also asked for the "same" relief in their civil complaint. Thus, while this case concerns rescission as a remedy, had the Engelhardts sought injunctive relief as well as money damages in arbitration, there is no reason under the court's opinion why these private parties could not have also contracted away the Commissioner's authority under section 7320 to seek an injunction against Olde Discount.

The Commissioner cannot be bound by an agreement to which he neither agreed nor was a party. One cannot bargain away that which one does not possess; since the power to sue under section 7325(b) and seek appropriate equitable remedies on behalf of the State of Delaware and in the public interest belongs exclusively to the Commissioner, that power cannot be compromised by an agreement between private individuals. *Cf. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19–21, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (in a multi-party/claim case, arbitration agreement will be enforced as to those parties and claims subject to the agreement despite piecemeal litigation in the arbitral and judicial forums). Further, the Commissioner's authority to sue and seek remedies exists independently of a plaintiff's right to sue and thus is not derivative of the Engelhardts' rights. *See* 6 Del. Code Ann. § 7319 ("The Commissioner in his discretion may make such public or private investigations within or outside of this State as he deems necessary...."). *See also Gilmer v. Interstate/Johnson Lane Corp.*, — U.S. —, —, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991) ("In any event, the EEOC's role in combating age discrimination is not dependent on the filing of a charge; the agency may receive information concerning alleged violations of the ADEA 'from any source,' and it has independent authority to investigate age discrimination"). *Cf. Isidor Paiewonsky Assocs. v. Sharp Properties, Inc.*, 998 F.2d 145 (3d Cir.1993) (a subtenant who was not a party to an arbitration agreement was bound by the conclusions of the arbitrator because the subtenant and tenant are in privity and thus the subtenant's rights are derivative of the tenant's under traditional landlord-tenant laws).

The argument that section 7325(b) is "preempted" by the FAA or that the Commission is "contractually bound" by the arbitration agreement rests on the unsound assumption that legal damages by the Engelhardts and rescission sought by the Commissioner in the public interest are in essence the same remedies. In *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), although regulations provided that a landlord could not be required to make a tender of illegally collected rent if the suit was brought by any person who had commenced an action against the defendant under Section 205(e) of the Emergency Price Control Act of 1942, a federal agency brought suit against the landlord and sought restitution of illegally collected rent under the authority of § 205(a) of the statute. The Supreme Court considered whether a federal district court had jurisdiction, in an enforcement proceeding brought by a federal agency under § 205(a), to order restitution of illegally collected rents. The Court held that it did, and reasoned:

It is true that § 205(e) authorizes an aggrieved purchaser or tenant to sue for damages on his own behalf.... To the extent that damages might properly be awarded by a court of equity in the exercise of its jurisdiction under § 205(a), § 205(e) supersedes that possibility and provides an exclusive remedy relative to damages. *It establishes the sole means whereby individuals may assert their private right to [legal] damages....* Moreover, a court giving relief under § 205(e) acts as a court of law rather than as a court of equity. But with the exception of damages, § 205(e) in no way conflicts with the jurisdiction of equity courts under § 205(a) to issue whatever "other orders" may be necessary to vindicate the public interest, to compel compliance with the Act and to prevent and undo inflationary tendencies.

*Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from the damages and penalties which may be awarded under § 205(e).* When the Administrator seeks restitution under § 205(a) he does not request the court to award statutory damages to the purchaser or tenant or to pay to such person part of the penalties which go to the United States treasury in a suit by the Administrator under § 205(e). Rather he asks the court to act *in the public interest* by restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant. Such action is within the recognized power and within the highest tradition of a court of equity. Thus it is plainly unaffected by the provisions of § 205(e).

328 U.S. at 399–403, 66 S.Ct. at 1090–91 (emphasis added and citations omitted). Thus, legal damages and equitable relief, such as restitution and rescission, are different forms of relief, serving different interests and arising from different powers of the court. Even if an arbitrator decides that the Engelhardts are not entitled to legal damages, that decision neither conflicts with nor precludes a court of equity from granting the remedy of rescission to the Engelhardts in the interest of the public.

The Supreme Court recognized this difference in the arbitration context. In *Gilmer,* the Supreme Court considered whether a claim under the Age Discrimination in Employment Act of 1967 (ADEA) can be subject to arbitration under the FAA. The Court held that ADEA claims were arbitrable. The Court found unpersuasive the argument that arbitration would undermine the role of the EEOC in enforcing the ADEA. It reasoned, "An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action." —— U.S. at ——, 111 S.Ct. at 1653. Furthermore, "it should be remembered that arbitration agreements will not preclude the *EEOC* from bringing actions seeking class-wide and equitable relief." *Id.* —— U.S. at ——, 111 S.Ct. at 1655 (emphasis in original). Equitable relief includes such remedies as injunction and rescission. *Porter,* 328 U.S. at 399–403, 66 S.Ct. at 1090–91.

I believe that the opinion of the court unlawfully transfers the authority vested in the Commissioner to private parties. Thus, the boundaries of what the Commissioner or any other agency with enforcement powers can or cannot do is not defined by statute, but is limited by the agreements of private individuals. I would hold that since section 7325(b) of the Delaware Securities Act expressly provides that the Commissioner may seek appropriate equitable relief against a violator of the state's securities laws, he is not bound by a private arbitration agreement, nor need he refrain from seeking rescission in the public interest simply because a private party agreed to seek legal damages in an arbitral forum rather than a court of law. I therefore respectfully dissent.

## SUR PETITION FOR REHEARING

Aug. 26, 1993.

Before: SLOVITER, Chief Judge, and BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, and ROSENN, Circuit Judges.

The petition for rehearing filed by the appellants W. Michael Tupman, Richard W. Hubbard, Eugene H. Engelhardt, and Carol D. Engelhardt in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the court in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judge Nygaard would grant rehearing by the court in banc for the reasons set forth in his dissenting opinion limited to the preemption issue.